ARTHUR E. WYMAN *vs.* GEORGE A. CLARK & others.

Hampshire.    September 17, 1901. — December 31, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, & BARKER, JJ.

*Negligence*, Employer's liability, Contributory. *Practice, Civil*, Charging jury.

In an action by a pattern maker against his employer to recover for having two fingers cut off by a buzz planing machine which he was operating, it appeared, that the plaintiff was engaged in planing the edge of a strip of pine wood about twenty inches long, when he was interrupted in his work and left the room for twenty or thirty minutes, that when he returned he found the pine strip in prac-

tically the same position in which he had left it on the table of the machine, that he started up the machine and attempted to run the strip of wood through it in the usual way, but as soon as it touched the knives it was thrown from his hand and the fingers of his left hand dropped upon the knives, that other workmen than the plaintiff were employed in the same room and were accustomed to use the planer at any time equally with the plaintiff, and it also was the practice to allow outside persons to use it upon occasion for their work, and all this was known to the plaintiff who had worked in the room for sixteen years, that when he started to do a new job on the planer he stooped down and looked across the top of the table to ascertain how much the knives projected and whether they were sharp and to feel of them to find whether they were nicked, and if the front table was not in proper adjustment he would adjust it, and if the knives were blunt or nicked he would take them out and put in a new pair, that on the occasion of the accident the plaintiff on his return took none of these precautions, assuming that the machine was in the same condition and in the same state of adjustment as when he left the room, that in fact during his absence the knives had been dulled and nicked and the tables had been lowered, that the effect of the dulling and nicking was to throw the strip of pine from his hands instead of cutting it, the effect of the lowering of the front table was to expose a greater quantity of wood to the blow of the dulled knife, and the effect of the lowering of the rear table was to let down the front end of the strip instead of holding it in place. *Held,* that, without deciding whether there was evidence of due care on the part of the plaintiff to go to the jury, there was evidence of negligence on his part contributing to the injury, and that there was no sufficient evidence of negligence on the part of the defendant to justify submitting the case to the jury, the use of the machine during the plaintiff's absence having been in accordance with a usual and long continued practice. It was not the duty of the defendant to inspect the machine whenever used by his own workmen or by outside persons.

In this case an exception to certain portions of the charge of the presiding judge was sustained on the ground that they were not warranted by the evidence.

TORT by a pattern maker employed by the defendants for having two fingers cut off by the knives of a buzz planing machine. Writ dated April 5, 1900.

At the trial in the Superior Court, before *Bond,* J., at the close of the plaintiff's evidence, the substance of which appears in the opinion of the court, the defendants rested, and requested the judge to order a verdict for the defendants. This the judge refused to do. The defendants then requested, among others, the following rulings: that upon the whole evidence and the pleadings the plaintiff was not entitled to recover; that there was no sufficient evidence that the injuries of the plaintiff were not due to the risks of the employment that were voluntarily assumed by him; that there was no sufficient evidence that the failure by the plaintiff to exercise ordinary care did not contribute to his injuries; and that there was no sufficient evidence

of any negligence upon the part of the defendants that was the proximate cause of the plaintiff's injuries.

The judge refused to make any of the rulings requested, and submitted the case to the jury on the first count of the declaration, which alleged that the defendants failed to provide a safe and suitable machine for the plaintiff to operate, and negligently allowed the machine on which the plaintiff was at work to be in a defective and unsafe condition.

The jury returned a verdict for the plaintiff in the sum of $1,000; and the defendants alleged exceptions to the refusals of their requests for rulings and also to certain portions of the judge's charge which are mentioned and referred to in the opinion.

*W. Hamilton*, (*W. H. Brooks* with him,) for the defendants.

*J. C. Hammond*, for the plaintiff.

BARKER, J.   1. The planing machine by which the plaintiff was hurt was one with the use of which he had been familiar for many years.   Its surface was composed of two oblong metal tables placed with two of their narrower ends facing each other and separated by a space of about three inches in which revolved rapidly toward the operator a shaft carrying knives. The rear table, when the machine was in proper order for use, was so adjusted and fixed that the upper edge of the end next the revolving knives was held at the same elevation with the top of the knife edges at the highest point reached by them in their motion.   The front table was so constructed as to be readily lowered or raised, and upon its position at the instant of use depended the thickness of the shaving cut by the knives from the lower surface of the object in process of being planed.

The usual and proper way of using the planer was for the operator to place the wood to be planed upon the front table, push it forward to and over the knives with his right hand and hold it down upon the knives with his left hand, which was thus brought near to and over them.   Their impact against the wood tended to throw it back and out of the operator's hands, and if it was allowed to escape the natural result was that the left hand would come in contact with the knives.

The plaintiff's duty called him to plane the narrow edge of a strip of pine wood which was eighteen or twenty inches long,

about two and one half inches wide and three quarters or five eighths of an inch thick. The undisputed evidence showed that having been interrupted in his work, and having left the room for some twenty or thirty minutes, he returned to the room and started up the machine and attempted to run the strip of wood through in the usual way, and that as soon as it touched the knives it was immediately thrown from his hands, when the fingers of his left hand dropped upon the knives.

It was undisputed that before the plaintiff's absence for the twenty or thirty minutes the machine had been used by him on similar work to that which he was doing when hurt, and that when he went out the machine was in proper order and adjustment for that work. Just before he went out he was at work upon or was ready to work upon the pine strip, and when he went he left it upon the table of the machine, and when he came back he found it in practically the same position. He assumed that the machine was in the same condition and in the same state of adjustment as when he left the room, and upon his return he made no examination of the machine to ascertain whether the condition of the knives or the adjustment of the tables had been changed before starting the machine and attempting to plane the strip of pine. In fact during his absence the knives had been dulled and nicked, and the table had been lowered. The effect of the dulling and nicking of the knives was that their impact against the pine tended to throw the strip out of his hands instead of cutting away the part which came in contact with the knives, and the effect of the lowering of the front table was to expose a greater quantity of the wood to the blow of the dulled knife than would have been exposed to it if the table had not been lowered. The lowering of the rear table, if the strip passed over the space between the two tables would be to let down the front end of the strip, which when the rear table was properly adjusted and held at the same elevation with the top of the knives would be held up as the strip passed over the planer.

It is obvious that even when in perfect order and properly adjusted for the work to be done this machine was one the use of which was extremely dangerous to the operator, and that the care which he must exercise in its use must be of a high degree,

in order to be commensurate with the risk of the happening of an accident, and with the consequences of an accident should one occur.

The planer was in the wood room of the defendant's factory and other workmen than the plaintiff were employed in the same room. These other workmen were accustomed to use the planer at any time equally with the plaintiff. It was used by them not only upon soft wood, but upon oak and ash which tended to dull the knives more quickly than pine. Each use of the machine might require a change in the adjustment of the front table. Not only was the planer commonly used by the other workmen of the defendants, but it had always been the practice to allow outside persons to use it upon occasion for their own work. All this was perfectly known to the plaintiff, who had worked in the room for sixteen years.

The means which he ordinarily took when he started to do a new job on the planer to discover whether everything was in proper adjustment and whether the knives were sharp, was to stoop or get down and look across the top of the table and ascertain how much the knives projected, to look at them to see whether they were sharp, and to feel of them to ascertain whether they were nicked. When he commenced a job he would do these various things to discover whether everything was in proper condition, and if the front table was not in proper adjustment he would adjust it, and if the knives were blunt or nicked he would take them out and put in a new pair. Considering the nature of the machine, the great likelihood of an accident if it should be used when not in proper order and adjustment for the precise work in hand, and the grave consequences to be expected in case of any accident it is clear that due care required the operator to know in some way that the machine was in proper order and adjustment for the work to be done whenever he attempted to use it.

Before the plaintiff started the machine and began to use it upon his return to the room he took none of these his ordinary precautions. He had been absent for from twenty to thirty minutes, leaving in the room other workmen either of whom might have had occasion to use the planer upon work which would involve a change in the adjustment of the table or would

dull the knives. Besides this there was also the liability that some outsider, in accordance with the ordinary practice which the plaintiff knew, by using the planer during his absence might have worked in it such changes as would make it especially dangerous for him to use it as he found it. Knowing all this he neither made any examination as to the adjustment of the table or the condition of the knives, nor any inquiry of the persons who had remained in the room as to whether the planer had been used in his absence, but started the machine and attempted to plane the pine strip, relying only upon his knowledge that the machine had been in proper order and adjustment for his work when he left the room twenty minutes or half an hour before, and upon the further circumstance that the strip of pine when he returned was upon the table of the machine in practically the same position in which he left it when he went out.

To stoop and see whether the table was still in the right position for his work, to look at the knives and see whether they were still sharp, and to ascertain by touch whether they were nicked would have required but very little time or trouble, while to have inquired of those present whether the planer had been used in his absence would have taken but an instant. With his knowledge of what it was possible might occur in his absence and of the consequences to be expected from any intervening use of the machine, to omit all these easily taken precautions and rely wholly on the circumstance that the strip of pine was practically unchanged in its position, was evidence of negligence contributing to his injury. Whether the question of his due care was properly left to the jury we do not now decide, as the exceptions must be sustained upon other grounds.

2. We are of opinion that there was no sufficient evidence of negligence on the part of the defendants to justify submitting the case to the jury.

The change in the adjustment of the front table, and the dulling and nicking of the knives by use of the machine while the plaintiff was temporarily absent from the room were merely usual results of the use of the planer in doing work for which it was designed and kept. These circumstances could furnish no proof of negligence on the part of the defendants unless the use which caused them in this particular instance could have been

found to have been negligently allowed by the defendants or unless such use having been allowed properly, they knew or ought to have known that in this instance it had caused such results that the planer had become more than usually dangerous and had negligently failed to give the plaintiff warning. But the use made of the planer in the interval was not an extraordinary one. It was in accordance with a usual and long continued practice to allow contractors having work of their own proper to do upon such a machine to use the planer for that work. To allow such a use of the planer was not negligent. Neither was it negligent for the defendants not to have known in fact, or not to have anticipated that such a use of the planer by a contractor not in their employment would work such changes in its condition as to make it especially dangerous. It cannot be presumed that the contractors customarily allowed to use the planer were either reckless or ignorant of its proper use.

The evidence that after the accident one corner of the rear table of the planer was found to be slightly depressed, and that this depression was due to a fault in one of the supports occasioned by long use of the machine would not justify a finding of negligence on the part of the defendants. If it be assumed that this depression was the result of the use of the planer by the contractor while the plaintiff was absent from the room, it could not be contended either that the depression had existed before that use, or that it ought to have been anticipated by the defendants that such a depression would be occasioned by the use of the planer by their own workmen or by contractors. Nor did anything make it the duty of the defendants to inspect the machine whenever used by their own workmen or by contractors. If the evidence that one of the supports might slowly have become inadequate for its work so as to have yielded while the planer was operated by the contractor tended at all to show negligence, it was too slight to justify submitting the case to the jury.

3. We deem it best to comment upon one other aspect of the case. The declaration after having stated generally that the defendants negligently failed to keep the machine in a safe condition and negligently allowed it to be and remain in a defective and unsafe condition alleged more specifically that it was defective in not having a suitable adjustment of its tables with proper

relation to one another, and that the defendants had allowed the knives to become injured and dulled and the tables in front and rear to become improperly placed with relation to each other. There was no other allegation specifying any defect or unsafety in the machine. The bill of exceptions states all the material evidence, and gives the charge in full. At its conclusion the defendants saved an exception to certain portions of the charge among others to a part of it concerning the babbitting of the boxes or arbors in which the knife shaft revolved. There was no allegation in the declaration that the machine was faulty in this respect. The only mentions of the babbitting in the evidence were these two. The defendants' superintendent, who was the plaintiff's father and was called by him, upon his redirect examination, having before testified that one Young a machinist had repaired the planer after the accident testified, " My attention was not called to the babbitting in the boxes in connection with Mr. Young's repairs; I don't remember about that." Young upon cross-examination having admitted that on the previous Saturday he had told the examining counsel that he thought the first time he ever made repairs on the machine was six or seven weeks after the accident was asked, " Did n't you tell me that the only thing you fixed was the babbitting of the boxes this shaft runs in ? " and answered, " Yes, sir, I fixed up this table. — *Q.* The front table. *A.* Yes. — *Q.* That is all you did to the machine? *A.* Yes, sir."

It is plain that upon this state of the evidence it was not open to the plaintiff to contend, or proper for the judge to allow the jury to find that the defendants were at fault and liable to the plaintiff by reason of any defect in the babbitting of the boxes or arbors in which the knife shaft ran. Yet in the charge the judge said, " The plaintiff also says that the testimony indicated that the arbor on the box where the arbor to which the planer knives were fastened was not properly babbitted, and for some reason in consequence of the lack of babbitting in the box, that contributed to some extent to the uneven running of the planer knives, and that that caused the board to be thrown off," and further instructed them to the effect that it was enough if the plaintiff showed that this or the dulness of the knives or the depression of the rear table or any one or more of these

causes operated to throw the board out of the plaintiff's hand. The judge also charged, " Whether or not the fact that the boxes were not properly babbitted, that as the knives revolved they were too loose on the arbor, and if so, whether or not that would contribute in any degree.  Sometimes I have heard people use the expression that there would be a greater liability for the knives to ' stutter,' catch and start, would n't take hold and cut it out, because the arbor would give way, and therefore it would n't cut the wood properly, would have a tendency not to cut it out and to throw out of the hands of the operator."  Upon the state of the evidence disclosed by the bill of exceptions, to give these instructions was unwarranted, and this exception must be sustained.

*Exceptions sustained.*